IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LUMASCAPE USA, INC.; LUMASCAPE INDUSTRIES (PTY) LTD; MICHAEL AGUSTIN,

    Plaintiffs,

v.

VERTEX LIGHTING, INC.; FABRICE PELLEGRINO; DANIEL MERCILLE; MICHEL SANSCARTIER,

    Defendants.

No. C 05-04809 WHA

**ORDER STAYING ACTION PENDING EXHAUSTION OF REMEDIES UNDER FORUM-SELECTION CLAUSE**

**INTRODUCTION**

In this action by a manufacturer against a former distributor, the main issue is whether to enforce a forum-selection clause. Defendant Vertex Lighting, Inc. moves to dismiss for lack of personal jurisdiction, improper venue or alternatively *forum non conveniens*. At a hearing on March 23, 2006, plaintiffs withdrew their claims against all individual defendants. This order holds that personal jurisdiction over Vertex has been sufficiently shown as to certain claims. The action, however, will be stayed pending exhaustion by plaintiff of its remedies under the forum-selection clause. To what extent it will be dismissed will be determined after the exhaustion process.

**STATEMENT**

Plaintiff Lumascape Industries, Ltd. ("Lumascape"), an Australia corporation, manufactures lighting fixtures. Plaintiff Michael Agustin is the managing director and an Australian citizen. Plaintiff Lumascape USA is a subsidiary of Lumascape and has an office in San Carlos, California. It was incorporated in 2004 to distribute Lumascape products in the United States. Defendant Vertex Lighting, Inc., a Canada corporation, is a lighting distributor.

In May 2000, Lumascape and Vertex entered into a manufacturer-distributor agreement. Under the agreement Vertex was appointed the exclusive sales representative for Lumascape in the United States. The agreement contained a forum-selection clause which subjected Lumascape and Vertex to the Australia courts. It stated:

> This agreement is subject to the courts of Australia and actions bought [sic] by either party must be heard in Australian courts.

Agustin Decl., Exh. B at 3.

Over the course of the relationship, Vertex made $1.5 million in sales of Lumascape product in California. The relationship ended in acrimony on December 31, 2004, when Lumascape terminated the agreement. Lumascape accused Vertex of not properly paying. Vertex, on the other hand, accused Lumascape of seeking to insinuate itself into Vertex's network of sales representatives. Lumascape is currently suing Vertex and its president in an Australia court alleging breach of contract and misleading and deceptive conduct in connection with the terminated agreement.

In February 2005, Vertex sent a letter from its offices in Canada to Graybar Electric, a customer in Las Vegas. Copies were sent to Vertex's agent in Los Angeles and a lighting designer in Los Angeles involved on a project with Graybar Electric. The letter referred to a purchase order for lighting fixtures ordered through Vertex prior to the termination of the Lumascape-Vertex agreement. The letterhead included the text "Lumascape North America" below Vertex's logo. In the letter, Vertex explained that it was unable to fulfill the order because the lights were unsuitable for the customer's intention of using the lights underwater. The letter stated that Vertex was "forced to decline supplying such a product due to public safety issues or the legal ramifications or liabilities that may arise from a misapplication of the

2

1  product" (Agustin Decl., Exh. C). Graybar Electric subsequently cancelled its order of
2  $19,266.00.

3  In a separate alleged incident, Vertex sold counterfeit Lumascape lighting fixtures to an
4  Indiana distributor who in turn sold them to a project in Texas. The lights were found
5  defective. The Indiana distributor has now brought suit against both Vertex and Lumascape in
6  Indiana district court. Claims between the latter two are expected.

7  Plaintiffs' complaint alleges ten claims covering federal and state statutes. The claims
8  include trademark infringement, trademark dilution, unfair competition, intentional interference
9  with economic relationship, trade libel and misappropriation of trade secrets.

10  Vertex now moves to dismiss for lack of personal jurisdiction, improper venue based on
11  the forum-selection clause in the Lumascape-Vertex agreement or alternatively on grounds of
12  *forum non conveniens*. At a hearing on March 23, 2006, as stated, plaintiffs withdrew their
13  claims against all individual defendants.

**ANALYSIS**

**1.  PERSONAL JURISDICTION.**

This order recognizes that the issue of personal jurisdiction can be skipped over if there is a more direct means to dispose of the case. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (holding that "when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue"). The difficulty in this case is that there is no direct dispositive way to dispose of the case in light of this order's resolution on the issue involving the forum-selection clause. Therefore, this order will address the challenge to personal jurisdiction.

**A.  General Jurisdiction.**

In order for a court to exercise general jurisdiction over a nonresident defendant, the plaintiff must demonstrate that the defendant's contacts with the forum state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Columbia, S. A. v. Hall*, 466 U.S. 408, 416 (1984). "[I]n a controversy unrelated to a defendant's contacts with the forum, a court may exercise general jurisdiction only where 'continuous corporate operations within a state are

3

thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities.'" *Tauzon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 318 (1945)). "The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff carries the burden of demonstrating that personal jurisdiction exists. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984).

Defendant Vertex's contacts with California include $1.5 million in sales to twenty California customers during the period from May 2000 to January 2005. "Most" of these sales were Lumascape products. Although Vertex had no office or distribution facility in California, its website included a Santa Ana address. According to Vertex, it has never used the address to meet with customers, has never had an employee or furniture there and has never received business correspondence there. Instead, the Santa Ana address is the address of an unrelated company owned by a friend of Vertex's president. It was inserted on Vertex's website in the spring of 2004 when Vertex decided that it would be good for business to include an address in the United States. Finally, Vertex maintained four independent sales representatives in California. Vertex's relationship with three of them ended after the Lumascape-Vertex agreement was terminated. Vertex's only remaining sales representative in California was responsible for revenues of approximately $20,000 during 2005, the year following termination of the Lumascape-Vertex agreement. No Lumascape product was sold during this period.

Vertex cites to *Congoleum Co. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984), and argues that sales through independent, non-exclusive sales representatives are not enough to subject an out-of-state company to general jurisdiction. There, the activities of the defendant's hired consultant in the forum consisted of soliciting orders, recommending other sales agents, ordering samples, promoting the defendant's products through the mail and through a showroom display in the forum and attending trade shows and sales meetings. In

4

1  refusing to find general jurisdiction, *Congoleum* noted that, "no court has ever held that the
2  maintenance of even a substantial sales force within the state is sufficient contact to assert
3  jurisdiction in an *unrelated* cause of action." *Id*. at 1242 (emphasis added). *Congoleum* left
4  open the possibility that similar contacts may be sufficient to support jurisdiction over a claim
5  *related* to the contacts.

6  Plaintiffs rely on two decisions outside our circuit. Neither decision is on point. In
7  *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996), the
8  defendant's contacts with the forum state included sales of four million dollars over a four-year
9  period, ongoing relationships with five independent authorized dealers, registration to do
10 business, payment of forum income and sales tax, national advertising, direct marketing to at
11 least three firms in the forum, an employee who resided and maintained an office in the forum
12 and more than one hundred visits by the defendant's employees to the forum. *Metropolitan Life*
13 acknowledged that it was "a close case" but held that "when taken together [the contacts were]
14 sufficient to establish general jurisdiction." *Id*. at 570, 572. *Metropolitan Life* is
15 distinguishable. It involved a defendant having greater contacts with the forum than Vertex had
16 with California. For example, the defendant in *Metropolitan Life*, unlike Vertex, registered to
17 do business in the forum and stationed an employee there.

18 The other reference is *Michigan National Bank v. Quality Dinette, Inc.*, 888 F.2d 462
19 (6th Cir. 1989). There, the defendants' contacts included hiring an independent sales
20 representative in the forum, mail order solicitations of business in the forum and 409 sales from
21 1987 to 1986 which totaled $627,525. This figure represented three percent of the defendants'
22 total sales. The defendants had no real estate, bank accounts or telephone listings in the forum.
23 *Michigan National* found that the defendants' contacts and the "fact that [the defendants] made
24 at least one sale in [the forum] each and every month during 1986 and 1987, indicate that [the
25 defendants] have conducted a continuous and systematic part of their general business in the
26 forum." *Id*. at 466. *Michigan National* is also distinguishable. Here, plaintiffs have not
27 alleged, for example, facts suggesting the pervasiveness of Vertex's solicitation of business in
28 California that is on par with the defendants in *Michigan National* or *Metropolitan Life*.

On the present record, it seems tenuous to conclude that personal jurisdiction has been established. In light of the holdings below, however, it is unnecessary to make a final decision on that question. If the stay described below is ever lifted plaintiffs will be allowed to take discovery on the issue of general jurisdiction. This could be important as to claims for which this order holds specific jurisdiction has not yet been shown.

### B. Specific Jurisdiction Over Graybar-Letter Claims.

Specific jurisdiction over a defendant exists where (1) the defendant has purposefully availed himself of the benefits and protections of the forum; (2) the claim arose directly out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction is reasonable. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Again, plaintiff carries the burden of demonstrating that personal jurisdiction exists. *Cubbage*, 744 F.2d at 667.

#### (1) Purposeful Availment through Forum-Related Activities.

"[T]o have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. Natl Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). When an intentional tort claim is asserted, the "effects test" is utilized for the purposeful-availment analysis. The "effects test" requires that "the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

It is undisputed that Vertex acted intentionally in copying the Graybar letter to its agent in California and a lighting designer in California. The Graybar letter appears to form the basis of plaintiffs' first through seventh claims for unfair competition, trademark infringement, intentional interference with economic relationship and trade libel. Plaintiffs' allegations are sufficient as to the intentional act requirement.

The express aiming requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087

6

1   (9th Cir. 2000). Plaintiffs allege that Vertex's use of the name "Lumascape North America" on
2   the Graybar letter was wrongful. Plaintiffs contend that it was "confusing to the average
3   consumer [as to] who is the authorized distributor of Lumascape's products in California,
4   Lumascape USA, Inc., a California corporation, or 'Lumascape North America'" (Opp. 11–12).
5   Plaintiffs further assert wrongful conduct with respect to the content of the letter which was "a
6   blatant attempt to interfere with Lumascape USA's business in the state" (*ibid.*). The prima
7   facie jurisdictional analysis requires a court to accept the plaintiff's allegations as true.
8   *Bancroft*, 223 F.3d at 1087. Consequently, plaintiffs have properly alleged that the Graybar
9   letter was expressly aimed at California because, according to plaintiffs, it individually targeted
10  plaintiff Lumascape USA, a California corporation, and it was sent into the state to two firms.

11  Vertex argues *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985), requires a
12  different result. There the plaintiff, a member of the National Football League Players
13  Association ("union"), sued the union's attorney for professional malpractice. The plaintiff
14  claimed mismanagement of its grievance claim. The plaintiff sought to establish personal
15  jurisdiction on the basis of the defendant's telephone calls and letters to the plaintiff in
16  California. *Peterson* found no personal jurisdiction over the defendant and stated that "use of
17  the mails, telephone, or other international communications simply do not qualify as purposeful
18  activity invoking the benefits and protections of the [forum] state." 771 F.2d at 1262 (citation
19  omitted).

20  *Peterson* is distinguishable. Unlike the Graybar letter here, the letters and phone calls in
21  *Peterson* did not form the basis for the plaintiff's claim. Instead, it was the allegedly negligent
22  acts of the attorney in Washington D.C. that formed the basis of the plaintiff's claim for
23  professional malpractice.

24  The final prong of the "effects test" requires an allegation that the defendant "caus[ed]
25  harm that the defendant [knew was] likely to be suffered in the forum state." *Dole*, 303 F.3d at
26  1111; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,
27  1207 (9th Cir. 2006) (stating that "the 'brunt' of the harm need not be suffered in the forum
28  state"). Plaintiffs assert that "Defendant's direction of the letter to, *inter alia*, one of its

7

California distributors, disparaging plaintiff's product, and leading to the cancellation of at least one existing contract, was and is a blatant attempt to interfere with Lumascape USA's business in the state . . ." (Opp. 12).  Continuing, plaintiffs argue that "[i]t is more than rhetorical to ask what purpose could be served by directing commercially critical — and false — comments to a distributor in California, a distributor which is itself in direct competition with plaintiffs in this State" (*ibid.*).  Plaintiffs' allegations with respect to the Graybar-letter claims are sufficient.

### (2) Claims Arising Out of Vertex's Activities.

Plaintiffs' initial seven claims arise directly out of Vertex's contacts with the forum.  As described above, the Graybar letter, which undergirds the claims, was sent to persons in California.

### (3) Reasonableness.

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction."  The Ninth Circuit has identified seven factors relevant to the reasonableness inquiry.  They include:  (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Dole*, 303 F.3d at 1114.

Vertex has directed its activities to the forum to a degree sufficient to satisfy the purposeful availment requirement.  The first factor thus weighs in favor of jurisdiction.

Though Vertex as a Canada corporation is a nonresident, several facts mitigate the burden of litigating in California.  *First*, Vertex's president and director have made business trips to California.  *Second*, Vertex still has a sales representative in California (Reply Br. 4).

8

The extent of conflict with the sovereignty of defendant's state is unclear. Vertex resides in Canada. Yet, the acts in question occurred California and at present, no action has been brought in Canada. This factor favors neither party.

California certainly has a strong interest in providing a forum for its residents and citizens who are tortiously injured. Yet this interest is slight when the only fact supporting plaintiffs' initial seven claims is a single letter sent to two persons in California. This factor only weakly favors plaintiffs.

It is difficult to determine whether California would be the most efficient forum for resolution of the dispute. The sources of proof are in California, Canada and Australia. Some recipients of the Graybar letter are in California. Only California can produce California witnesses, live at trial and only California can produce California witnesses at depositions without the burden of the Hague Convention. On the other hand, there is already on-going litigation in Australia between Vertex and Lumascape concerning their now-terminated agreement. At this stage, this factor favors neither party.

Australia certainly seems to be a more convenient forum for plaintiffs. Lumascape is an Australia corporation. Presumably convenience was why Lumascape wanted the forum-selection clause in the first place. Oddly, it is Vertex that is insisting on litigation one third of the way around the globe from its home. On the other hand, Lumascape USA is in California. It was recently incorporated in 2004.

Both sides agreed only a few years ago that Australia was convenient. Certainly it would be a reasonable alternative. That does not mean, however, that California would be unreasonable. In the Australia forum, Vertex might well seek to frustrate resolution of claims based on American law, as the Court has seen occur in other cases in this posture. At the hearing on this motion, Vertex counsel was evasive in how the American claims would be handled in the Australia court.

The factors do not overwhelmingly favor either party. Vertex has not met its burden to present a compelling case that would render jurisdiction unreasonable as to plaintiffs' seven claims based on the Graybar letter.

9

### C.     Specific Jurisdiction Over Counterfeiting Claims.

Plaintiffs' eighth through tenth claims for misappropriation and unfair competition appear to be based on allegedly counterfeit Lumascape lights that Vertex sent from Canada to an Indiana lighting distributor who in turn sold the lights to a project in Texas. Plaintiffs claim that "[Vertex's] counterfeiting of products, are acts on their face which are directed to, and can have no other effect, than to damage the reputation of plaintiffs, causing consumers to question the credibility or quality of the products being distributed by Lumascape USA" (Opp. 12).

While these allegations satisfy the intentional act requirement, they do not satisfy the express aiming requirement. Plaintiffs do not sufficiently allege that these lights were also sent to California. On point is *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784 (9th Cir. 1977). In *Amba*, the plaintiff brought an action in Arizona district court for unfair competition, trademark infringement, false designation of origin and patent infringement based on the California defendant's importation of allegedly counterfeit goods. *Amba* found that:

> With no showing that the imitations actually made their way into Arizona through either [defendant] or the California mail order houses to which it sold, personal jurisdiction over [defendant is] . . . lacking.

*Id*. at 787–88.

Similarly, plaintiffs here have not made a showing that Vertex's allegedly counterfeit lights "actually made their way into" California. As *Amba* explained, "[a] bare allegation of harm or injury suffered in the forum state does not . . . by itself confer personal jurisdiction . . . ." *Id*. at 788.

*Gordy v. Daily News, L. P.*, 95 F.3d 829 (9th Cir. 1996), is distinguishable. *Gordy* found personal jurisdiction over the *Daily News*, a New York publisher, in a libel suit concerning a California plaintiff. The cornerstone of *Gordy* was that the California plaintiff was "targeted", *i.e.*, "[the defendants] wrote and published their allegedly defamatory column intentionally directing it at [the plaintiff], a California resident." *Id*. at 833. Here, Vertex's allegedly counterfeit lights "targeted" not California, but Indiana.

**D.     Pendent Personal Jurisdiction.**

Aside from the Graybar incident, the rest of the case concerns the separate Indiana-Texas story. This order holds that, standing alone, personal jurisdiction has not been shown as to the Indiana-Texas events. This leads to the issue of pendent personal jurisdiction:

> Where . . . a plaintiff raises . . . separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim. However, if the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not the other, it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977) (citations omitted).

> [U]nder the doctrine of pendent personal jurisdiction, a defendant may be required to defend a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.

*CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) (citation omitted).

In *CE Distribution*, the plaintiff brought a claim for intentional interference with contract, a claim for breach of contract and a claim for declaratory relief. *CE Distribution* applied the "effects test" and found specific jurisdiction as to the intentional tort claim based on the defendant's related purchases and sales in the forum. The plaintiff's remaining claims failed the "effects test." Nevertheless, pendent jurisdiction saved these remaining claims. *CE Distribution* stated:

> [the defendant's] purchases and sales [in the forum], however, had little relation to the breach of contract claim that [the plaintiff] now seeks to bring. Despite these limited contacts, we conclude that the district court had discretion to exercise personal jurisdiction over the contract claim under the doctrine of pendent personal jurisdiction, because personal jurisdiction existed as to [the plaintiff's] intentional tort claim.
>
> \*     \*     \*
>
> Although the facts underlying the declaratory relief claim do not exactly track the facts underlying the claims for intentional interference with contract and breach of contract, the core facts of the allegations are the same. The allegations and counterallegations

11

> concern the same basic facts — competing sales of electronic products — and are sufficiently connected to support pendent personal jurisdiction.

*Id.* at 1113–14; *see also Channell v. Citicorp Nat'l Svcs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996).

In light of the stay that will issue in connection with the forum-selection clause, it is unnecessary to resolve this issue at this time, especially since litigation in Indiana is already underway between the two parties as to the counterfeit goods.

### 2. FORUM-SELECTION CLAUSE.

A motion to enforce a forum-selection clause is treated as a motion to dismiss for improper venue under FRCP 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The pleadings need not be accepted as true and facts outside the pleadings may be considered.

> [F]orum-selection clauses can be equally applicable to contractual and tort causes of action. Whether a forum-selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.
>
> *       *       *
>
> Forum-selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching. The opposing party has the burden to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court (citations omitted).

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514–15 (9th Cir. 1988).

Here, all claims require resort to the Lumascape-Vertex agreement. Plaintiffs' first through fifth claims make sweeping assertions of trademark infringement and violations of unfair competition law. The alleged misconduct seems to distill to this: Vertex sent a letter concerning a pre-termination order using Lumascape's trademark. On the letterhead stationary the words "LUMASCAPE North America" was printed below Vertex's mark (Agustin Decl., Exh. C). Plaintiffs claim that "[a]t no time was Vertex authorized to . . . advertise it self [sic] as 'Lumascape North America'" (Agustin Decl. ¶ 13). According to plaintiffs this constituted trademark violation, trade name infringement and dilution of their mark.

12

The agreement provided that "Lumascape Products shall be entitled to state of the art representation practices" and that "Vertex shall apply proper business ethics throughout sales and marketing activities performed by Vertex" (Agustin Decl., Exh. B at 1). Whether Vertex was authorized to represent itself by affixing the text "Lumascape North America" on its letterhead below the Vertex logo necessarily requires reference to the parties' contract.

Claims six and seven allege intentional interference with economic relationship and trade libel, respectively. Undergirding these claims is the same letter. Plaintiffs assert that the letter falsely stated that the lighting fixture was unsuitable for submersible applications and improperly warned of liabilities from misuse. Plaintiffs claim that Vertex knew that these statements were false and that the letter was sent so that the customer would cancel its order. Subsequently, the customer did cancel its order of $19,266.00.

The agreement, in addition to providing that "Vertex shall apply proper business ethics throughout sales . . ." also stated that "[i]t is a Vertex responsibility to ensure the customer is properly educated" (*id*. at 3). Again, reference to the contract is necessary to determine, for example, whether Vertex applied "proper business ethics throughout sales" and "ensure[d] [that] the customer [was] properly educated."

On point is *Omron Healthcare, Inc. v. Maclaren Exports, Ltd.*, 28 F.3d 600 (7th Cir. 1994). *Omron* examined whether the plaintiff's trademark infringement claim was subject to a forum-selection clause. The clause provided that "all disputes arising out of [the distribution agreement] shall be referred to the High Court of Justice in England which will have exclusive jurisdiction . . . ." *Id*. at 601–02. The plaintiff argued that its claim arose out of trademark infringement, not out of contract and was therefore not subject to the forum-selection clause. *Omron* rejected that argument. *Omron* held that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement" for purposes of a forum-selection clause. *Id*. at 602. *Omron* further held that: (1) resolution of the dispute depended upon an understanding of the written distribution agreement between the parties and its implied terms, (2) the plaintiff's claim of trademark infringement was subject to the forum-selection clause, and (3) the plaintiff's claim had to be litigated in England. *Id*. at 601, 604.

13

Plaintiffs argue that *Omron* is distinguishable. Plaintiffs assert that their claims are not covered by the forum-selection clause as they arose after the contract was terminated and are independent of the contract. While the letter followed the termination, it was soon thereafter and it torpedoed an order that preceded the termination. The inquiry, moreover, is not the timing *per se* of the alleged offense but "whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow*, 858 F.2d at 514. The contract seems central to the Graybar dispute.

As for the Indiana-Texas episode concerning the sale of counterfeit goods, the same ultimate holding applies. Whether Vertex improperly used plaintiffs' information to forge phony copies of its lights necessarily requires resort to the contract. Plaintiffs concede that Vertex was authorized to possess information on plaintiffs' lighting designs and manufacturing process and to utilize the information in a limited manner (Compl. ¶ 56).

Plaintiff cites *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993), for the proposition that "where a plaintiff sues for copyright infringement and asserts no rights under a contract with defendant containing a forum-selection clause, the forum-selection clause has no effect." *Corcovado* is distinguishable. In that decision, *no* party was subject to the agreement containing the forum-selection clause. *See Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427 (N.D. Cal. 1997) (similarly distinguishing and rejecting *Corcovado* and finding that "the better view, and the one that is consistent with the Ninth Circuit approach adopted in *Manetti-Farrow*, is the one which upholds the forum-selection clause where the claims alleged in the complaint *relate to* the interpretation of the contract") (emphasis in original).

Plaintiffs' final argument is that the forum-selection clause should not be enforced because Australia has no interest in and is highly unlikely to enforce violations of United States federal and California state laws committed outside of Australia. We must remember, however, that it was Lumascape who inserted the forum-selection clause in the manufacturer-distributor agreement. There will be no injustice in requiring Lumascape to resort to Australia courts.

14

Plaintiffs correctly note that a forum-selection clause is unenforceable if enforcement is unreasonable and unjust, or where litigation in the designated forum would be so gravely difficult that the party would be deprived of his day in court. On the other hand, the party challenging the forum-selection clause bears a "heavy burden" of establishing the existence of the exceptions to enforcing a forum-selection clause. *Fireman's Fund Ins. Co. v. M. V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1998) (as amended) (holding that the unavailability of *in rem* proceedings in Korea was insufficient to invalidate the forum-selection clause).

Counsel state that "the courts of Australia would usually decline to exercise jurisdiction when the infringement occurred exclusively in a foreign jurisdiction" (Opp. 10). Yet, as Vertex points out, counsel qualified his assertion with the statement "*unless* the Defendant is resident in Australia or *consents to its jurisdiction*" (Reply Br. 5) (emphasis added). Vertex has consented to jurisdiction in Australia.

There is one potential unfairness, however. Once plaintiffs assert these claims in Australia, the court there may decline to adjudicate them. At our hearing, Vertex was evasive as to whether it would defend in Australia on procedural grounds so as to deflect the claims on the merits, as this Court has seen in parallel circumstances in the past when parties were remitted to a foreign country to adjudicate American claims. Rather than dismiss, this order will stay the action. If plaintiffs diligently seek to enforce their claims via the forum in Australia and are denied their day in court, then this Court shall entertain a motion to re-activate this case. And, the Australia court may wish to ask for this Court's assistance in facilitating discovery as to the Graybar matter (rather than fuss with the protracted procedures under the Hague Convention).

### 3. *FORUM NON CONVENIENS.*

To obtain a dismissal for *forum non conveniens*, a defendant must prove that an alternative forum exists, and that the balance of private and public interest factors strongly favor dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citation omitted). As explained above, it is yet unclear whether Australia will provide an alternative forum as to any and all issues.

15

**CONCLUSION**

Due to the ambiguity over whether the Australia courts will exercise jurisdiction and whether Vertex's consent was unqualified, a stay rather than a dismissal is proper. Should the Australia courts fail to provide an adequate forum despite diligence by plaintiffs, then this Court will consider whether to proceed with plaintiffs' claims. A further case management conference will be held on **SEPTEMBER 28, 2006, AT 11:00 A.M.**

**IT IS SO ORDERED.**

Dated: March 29, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE